## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY<br>Two North Second Street<br>Harrisburg, Pennsylvania 17101<br><br>　　　　　　　Plaintiff<br>　v.<br><br>ALLIANCE ROOFING & SHEET METAL, INC.<br>4215 Eastern Avenue<br>Baltimore, Maryland 21224<br>(Baltimore County)<br><br>and<br><br>SHEPPARD PRATT HEALTH SYSTEM, INC.<br>6501 North Charles Street<br>Towson, Maryland 21204<br>(Baltimore County )<br><br>and<br><br>WHITING-TURNER CONTRACTING COMPANY<br>300 East Joppa Road<br>Baltimore, Maryland 21286<br>(Baltimore County)<br><br>and<br><br>S&K ROOFING, SIDING & WINDOWS, INC.<br>5399 Enterprise Street<br>Eldersburg, MD 21784<br>(Carroll County ) | CIVIL ACTION – LAW<br><br>CASE NO. _____ |

and

HDR ARCHITECTURE, INC.
200 Kiewit Plaza Building
355 Farnam Street
Omaha, NE  68131

and

HEERY INTERNATIONAL, INC.
999 Peach Tree Street, NE
Atlanta, GA  30367

and

JFG SERVICES, INC. a/k/a
JFG CONTRACTKING, INC.
8524 Paddockview Drive
Gaithersburg, MD  20882
(Montgomery County)

            Defendants

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), by and through its attorneys, Thomas, Thomas & Hafer, LLP, files this Complaint against Defendants Alliance Roofing & Sheet Metal, Inc., Sheppard Pratt Health System, Inc., Whiting-Turner Contracting Company, S&K Roofing, Siding & Windows, Inc., HDR Architecture, Inc., Heery International, Inc. and JFG Services, Inc., and alleges as follows:

1. Penn National is a mutual insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 2 North Second Street, Harrisburg, Pennsylvania 17101.

2. Defendant Alliance Roofing & Sheet Metal, Inc. ("Alliance") is a Maryland corporation, with its principal place of business at 4215 Eastern Avenue, Baltimore, Maryland 21224.

3. Defendant Sheppard Pratt Health System, Inc. ("SPHS") is a Maryland corporation with its principal place of business at 6501 North Charles Street, Towson, Maryland 21204.

4. Defendant Whiting-Turner Contracting Company ("Whiting-Turner") is a Maryland corporation with its principal place of business at 300 East Joppa Road, Baltimore, Maryland 21286.

5. Defendant S&K Roofing, Siding & Windows, Inc. ("S&K") is a Maryland corporation with its principal place of business at 5399 Enterprise Street, Eldersburg, Maryland 21784.

6. Defendant HDR Architects, Inc. ("HDR") is a Nebraska corporation with its principal place of business at 200 Kiewit Plaza Building, 355 Farnam Street, Omaha, Nebraska 68131.

7. Defendant Heery International, Inc. ("Heery") is a Georgia corporation with its principal place of business at 999 Peach Tree Street, NE, Atlanta, Georgia 30367.

8. Defendant JFG Services, Inc. ("JFG") is a former Maryland Corporation with its principal place of business at 8524 Paddockview Drive, Gaithersburg, Maryland 20882.

9. This action for declaratory judgment is brought by Penn National pursuant to 28 U.S.C. §§ 2201-2202 in order to determine the parties' rights and responsibilities under insurance contracts between Penn National and Alliance and between Penn National and S&K.

10. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 in that the Penn National policies were issued to Alliance and S&K in this district.

11. Penn National issued a Commercial General Liability Policy to Defendant Alliance bearing Policy No. CL90630782 (the "Alliance policy"), which was in effect from May 1, 2006, through May 1, 2011. True and correct copies of the declarations and forms that made up the Alliance policy during the pertinent periods are attached hereto as Exhibit A.

12. Penn National issued a Commercial General Liability policy to Defendant S&K bearing policy No. CL90641045 (the "S&K policy") which was in effect from July 1, 2007 to July 1, 2010. True and correct copies of the declarations and forms that made up the S&K policy during the pertinent periods are attached hereto as Exhibit B.

13. A controversy exists among the parties concerning their respective rights and liabilities under the Alliance and S&K policies.

14. It is alleged upon information and belief that Defendant SPHS contracted with Whiting-Turner to serve as general contractor for the construction of a new, four-story psychiatric hospital facility; a new, attached gymnasium building; renovation of an existing power plant building; and related work, all located at 6501 North Charles Street in Baltimore County, Maryland (the "project").

15. It is alleged upon information and belief that Defendant Alliance was a subcontractor of Defendant Whiting-Turner for work performed on the project, specifically to install the slate roof system and other roofing components on the project.

16. It is alleged upon information and belief that Defendant Alliance contracted with Defendant S&K to serve as its subcontractor for the installation of the slate roof system and other roofing components on the project.

17. Upon information and belief, both Alliance and S&K installed portions of the slate roof system and other roofing components.

18. Upon information and belief, SPHS contends that following completion of the project, the slate roof system began to fail as evidenced by multiple leaks and the detachment of pieces of slate which fell from the roof and landed on walkways and common areas around the building.

19. In or about December 2010, SPHS filed a civil action in the Circuit Court of Baltimore County, Case No. 03-C-10-014393 ("the underlying action"), against Alliance, Whiting-Turner, HDR and Heery alleging that the failure of the slate roof system resulted from design and installation defects. A true and correct copy of the Amended Complaint in the underlying action is attached hereto as Exhibit C.

20. In the underlying action, Defendant Alliance has filed a Third Party Complaint joining Defendant S&K as a Third Party Defendant. A true and correct copy of the Third Party Complaint in the underlying action is attached hereto as Exhibit D.

21. In the underlying action, Third Party Defendant S&K has filed a Fourth Party Complaint joining its subcontractor, Defendant JFG, as a Fourth Party Defendant.

22.     SPHS has alleged in the underlying action that as a direct consequence of the defects and deficiencies in the slate roof system, the entire slate roof must be removed and reconstructed.

23.     SPHS has further alleged that in addition to the failing slate roof system, Whiting & Turner and Alliance are also liable for defective roof flashing, membranes and other roof components.

24.     SPHS has alleged in the underlying action that as a consequence of the various defects, it has incurred damages estimated at $10 million.

## COUNT I
## Claim for Declaratory Judgment as to the Alliance Policy

25.     The allegations of paragraphs 1-24 are incorporated by reference as though set forth here in full.

26.     SPHS has stated claims against Alliance in the underlying action for negligence and breach of express and implied warranties.

27.     In the underlying action, SPHS has alleged that Alliance was negligent and breached a duty to SPHS by failing to:

(1)     Identify flaws in designer construction that would cause the slate roof system to fail, allowing water to infiltrate the building and allowing slates to become unsecured and fall to the ground;

(2)     Insure that the slate roof system was designed and constructed free of any defects;

(3)     Insure that the slate roof system complied with the project plant specifications; federal, state and local laws; and industry standards;

   (4) Install the slate roof system using materials of good quality; and

   (5) Perform work in a qualified, skilled, workmanlike manner.

28. Defendant Alliance tendered the underlying action to Plaintiff Penn National, asserting a right to a defense and potential coverage under the policy.

29. A dispute exists between Penn National and Alliance as to whether Alliance is entitled to coverage under the policy with respect to the claims brought against it by SPHS.

30. Penn National provided notice to Alliance of its belief that coverage does not exist under the policy for the damages asserted by SPHS against Alliance in the underlying action but Penn National has been providing a defense to Defendant Alliance subject to reservations of rights as set forth in the letter attached hereto as Exhibit E.

31. SPHS alleges in the underlying action that it suffered damage to its property in that the work done by Defendant Alliance was improperly performed and/or defective.

32. Plaintiff Penn National alleges that coverage does not exist under the Alliance policy for Defendant Alliance's alleged liability to SPHS in that coverage exists only for legal liability for property damage or bodily injury caused by an "occurrence," which term is defined in the policy as "an accident." In this regard, the policy provides in pertinent part as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or

"property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

## SECTION V – DEFINITIONS

\* \* \* \* \* \*

(13) "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

33. Penn National alleges that the alleged performance by Alliance of work in an improper or defective manner is not an "occurrence" under the policy.

34. In addition, coverage may not exist under the policy pursuant to certain exclusions contained in the policy, including but not limited to the following:

2. **Exclusions**

This insurance does not apply to:

\* \* \* \* \*

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \* \* \* \*

j. **Damage to Property**

"Property damage" to:

\* \* \* \* \* \*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \* \* \* \*

> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \* \* \* \*

> **I.    Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

35.  In addition, Penn National seeks a determination that there is no coverage for Defendant Whiting-Turner as an additional insured under the Alliance policy for the claims brought against it by SPHS.

36.  The contract between general contractor Whiting-Turner and subcontractor Alliance states that Alliance shall maintain insurance and that Whiting-Turner "shall be named as an additional insured in its policies. A true and correct copy of the contract between Whiting-Turner and Alliance is attached hereto as Exhibit F.

37.  The Penn National policy contains an Automatic Additional Insured Endorsement which states in pertinent part as follows:

**AUTOMATIC ADDITIONAL INSUREDS –
OWNERS, CONTRACTORS AND SUBCONTRACTORS
(COMPLETED OPERATIONS)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**   The following provision is added to **SECTION II – WHO IS AN INSURED:**

1038630.1                                              10

> 6. Any person(s) or organization(s) (referred below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured for the "products-completed operations hazard", but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work", at the location or project designated and described in the contract or agreement, performed for that additional insured and included in the "products-completed operations hazard".
>
> A person's or organization's status as an additional insured under this endorsement ends when the obligation to provide additional insured status for the "products-completed operations hazard" in the written contract or agreement ends.

38. The requirements for coverage stated in the automatic additional insured endorsement are not met by the additional insured provision in the contract between Alliance and Whiting-Turner and Penn National therefore seeks a determination that Whiting-Turner is not an additional insured under the Alliance policy.

39. In addition, there is no coverage for the claims brought against Whiting-Turner by SPHS because all such claims arise from Whiting-Turner's alleged failure to fill its obligations under its contract with SPHS and coverage is, therefore, precluded under the contractual liability exclusion in the policy.

40. The contractual liability exclusion provides that the insurance does not apply to "bodily injury" or "property damage" for which the insured is obligated to pay damage by reason of the assumption of liability in a contract or agreement.

41. By this action, Penn National seeks a determination that there is no coverage or potential coverage and that Penn National owes no defense or indemnity to Alliance for the claims of faulty workmanship raised against it in the underlying action.

42. Penn National seeks a further determination that there is no coverage or potential coverage for Defendant Whiting-Turner as an additional insured for the claims brought against it by SPHS.

WHEREFORE, Pennsylvania National Mutual Casualty Insurance Company respectfully requests that the court enter judgment in its favor and issue a declaratory judgment that Defendant Alliance Roofing & Sheet Metal, Inc. is not entitled to coverage under Penn National Insurance Company policy No. CL 90630782 issued to it with respect to those claims made against it in the underlying action. It is further requested that the Court issue declaratory judgment stating that there is no coverage under the Penn National policy for Defendant Whiting-Turner as an additional insured under the policy for those claims brought against it in the underlying action.

## COUNT II
### Claim for Declaratory Judgment as to the S&K Policy

43. The allegations of paragraphs 1 through 24 are incorporated by reference as though set forth here in full.

44. Defendant Alliance has denied all claims that have been asserted against it by Whiting-Turner in the underlying action but alleges that in the event it is held liable to Whiting-Turner that such liability is the result of the acts or omissions of Defendant S&K.

45. Alliance has further alleged in the underlying action that to the extent the liability of Alliance is ultimately established, such liability is based on the actions or omissions of S&K as the active tortfeasor and that Alliance is entitled to indemnification or contribution from S&K in the event there is a judgment against Alliance.

46.     Defendant S&K has tendered the claims against it in the underlying action to Plaintiff Penn National, asserting a right to a defense and potential coverage under the S&K policy.

47.     A dispute exists between Penn National and S&K as to whether S&K is entitled to coverage under the policy with respect to the claims brought against it in the underlying action.

48.     Penn National provided notice to S&K of its belief that coverage does not exist under the policy for the claims asserted against S&K in the underlying action but Penn National has been providing a defense to Defendant S&K subject to reservations of rights as set forth in the letter attached hereto as Exhibit G.

49.     SPHS alleges in the underlying action that it suffered damage to its property in that the work done by Defendant Alliance was improperly performed and/or defective and Defendant Alliance has alleged that if the allegations are true and it is held liable to SPHS that it is entitled to indemnification from S&K to the extent that the improperly performed and/or defective work was performed by S&K.

50.     Plaintiff Penn National alleges that coverage does not exist under the S&K policy for Defendant S&K's alleged liability to Alliance and others in the underlying action in that coverage exists only for legal liability for property damage or bodily injury caused by an "occurrence," which term is defined in the policy as "an accident." In this regard, the policy provides in pertinent part as follows:

**SECTION I – COVERAGES**

## COVERAGE A   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

       (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

       (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

       No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    b. This insurance applies to "bodily injury" and "property damage" only if:

       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

## SECTION V – DEFINITIONS

* * * * * *

(13) "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

51. Penn National alleges that the alleged performance by S&K of work in an improper or defective manner is not an "occurrence" under the policy.

1038630.1

14

52. In addition, coverage may not exist under the policy pursuant to certain exclusions contained in the policy, including but not limited to the following:

2. **Exclusions**

This insurance does not apply to:

\* \* \* \* \* \*

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \* \* \* \*

j. **Damage to Property**

"Property damage" to:

\* \* \* \* \* \*

    (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \* \* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \* \* \* \*

I.    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

53.    By this action, Penn National seeks a determination that there is no coverage or potential coverage and that Penn National owes no defense or indemnity to S&K for the claims raised against it in the underlying action.

WHEREFORE, Pennsylvania National Mutual Casualty Insurance Company respectfully requests that the court enter judgment in its favor and issue a declaratory judgment that Defendant S&K Roofing, Siding & Windows, Inc. is not entitled to coverage under Penn National Insurance Company policy No. CL 90641045 issued to it with respect to those claims made against it in the underlying action.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

_____
Michael H. Burgoyne, Esquire
Federal Bar No. 03754
Woodholme Center, Suite 200
1829 Reisterstown Road
Baltimore, Maryland   21208
410-653-0460
410-484-2967 – facsimile
mburgoyne@tthlaw.com
*Attorney for Plaintiff*

Date: 5/8/12