IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

        Plaintiff,

              v.

ALLIANCE ROOFING & SHEET METAL,
INC., et al.,

        Defendants.

CIVIL NO.: WDQ-12-1427

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Pennsylvania National Mutual Casualty Insurance Company

("Penn National") sued Alliance Roofing & Sheet Metal, Inc.

("Alliance") and others[1] (collectively, the "Defendants") under

the Declaratory Judgment Act[2] to resolve coverage issues under

insurance policies issued by Penn National to Alliance and S&K.

Heery, HDR, Alliance, and S&K[3] (the "moving Defendants") have

---

[1] The other defendants are Sheppard Pratt Health System, Inc.
("SPHS"); Whiting-Turner Contracting Company ("Whiting-Turner");
S&K Roofing, Siding & Windows, Inc. ("S&K"); HDR Architecture,
Inc. ("HDR"); Heery International, Inc. ("Heery"); and JFG
Services, Inc. (a/k/a "JFG Contracting, Inc.") ("JFG").

[2] 28 U.S.C. §§ 2201, et seq.

[3] S&K captioned its motion as a "Motion of Joinder in Alliance
Roofing's Motion to Dismiss or Stay Under the Abstention
Doctrine." ECF No. 35. Because S&K offers additional arguments
in support of its motion, this Court will construe the motion as
a separate motion to dismiss.

each moved to dismiss or, alternatively, to stay. For the following reasons, Heery's, Alliance's, and S&K's motions will be granted; HDR's motion will be granted in part and denied in part.

## I. Background[4]

This action for declaratory judgment arises out of the parties' contested rights and liabilities under commercial general liability ("CGL") policies issued by Penn National to Alliance[5] (the "Alliance policy") and S&K[6] (the "S&K policy") (together, the "Penn National policies"). ECF No. 1 ¶¶ 11-13.

---

[4] For the motions to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (in determining whether it has jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment").

[5] The Alliance policy (Policy No. CL9 0630782) was effective from May 1, 2006 to May 1, 2011. ECF No. 1 ¶ 11. Penn National attached as Exhibit A to its complaint copies of the three most recent policies (May 1, 2008 to May 1, 2011). ECF No. 1, Ex. A.

[6] Penn National alleges that the S&K policy (Policy No. CL9 0641045) was effective from July 1, 2007 to July 1, 2010. ECF No. 1 ¶ 12. However, Penn National attached as Exhibit B to its complaint copies of four policies effective from July 1, 2008 to July 1, 2012. ECF No. 1, Ex. B.

A. The Penn National Policies[7]

The Penn National policies' CGL Coverage Form provided that Penn National would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and would have the "right and duty to defend the insured against any 'suit' seeking those damages."   CGL Form § I.A.1(a).   Section I.A.1(b) provided, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   *Id.* § V(13).   The Penn National policies also excluded from coverage "Contractual Liability,"[8] "Damage to

---

[7] The material provisions of the Penn National policies are the same.   In this memorandum opinion, references to a particular policy provision are references to Alliance and S&K's respective policies, for all relevant time periods.

[8] Specifically, CGL Form § I.A.2(b) listed as excluded from coverage:
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1)   That the insured would have in the absence of the contract or agreement; or
> (2)   Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury"

Property",[9] and "Damage to Your Work"[10].   *Id.* §§ I.A.2(b), (j),

(1).

---

> or "property damage" occurs subsequent to the
> execution of the contract or agreement. Solely
> for the purposes of liability assumed in an
> "insured contract," reasonable attorney fees and
> necessary litigation expenses incurred by or for
> a party other than an insured are deemed to be
> damages because of "bodily injury" or "property
> damage," provided:
> (a)   Liability to such party for, or for the cost
>       of, that party's defense has also been
>       assumed in the same "insured contract"; and
> (b)   Such attorney fees and litigation expenses
>       are for defense of that party against a
>       civil or alternative dispute resolution
>       proceeding in which damages to which this
>       insurance applies are alleged.

[9] CGL Form § I.A.2(j) listed as excluded from coverage "[p]roper-
ty damage" to, *inter alia*:
> (5) That particular part of real property on which you
> or any contractors or subcontractors working directly
> or indirectly on your behalf are performing
> operations, if the "property damage" arises out of
> those operations; or
> (6) That particular part of any property that must be
> restored, repaired or replaced because "your work" was
> incorrectly performed on it.

Paragraph (6) of this exclusion did not "apply to
'property damage' included in the 'product-completed
operations hazard.'"   *Id.*

[10] CGL Form § I.A.2(1) listed as excluded from coverage "'[p]rop-
erty damage' to 'your work' arising out of it or any part of it
and included in the 'products-completed operations hazard.'"
However, this exclusion did not apply if "the damaged work or
the work out of which the damage ar[ose] was performed on your
behalf by a subcontractor."   *Id.*

The Penn National policies also contained an "Automatic Additional Insureds Endorsement," which modified CGL coverage to add that an "insured" is also

> [a]ny person(s) or organization(s) . . . with whom you are required in a written contract or agreement to name as an additional insured for the "products-completed operations hazard," but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work," at the location or project designated and described in the contract or agreement, performed for that additional insured and included in the "products-completed operations hazard."

*See* ECF No. 1, Exs. A, B.  However, "[a] person's or organization's status as an additional insured under this endorsement ends when the obligation to provide additional insured status for the 'products-completed operations hazard' in the written contract or agreement ends."  *Id.*

B. The Project

On or about March 8, 2002, SPHS contracted Heery to serve as its program manager for the design and construction of a psychiatric hospital facility and attached gymnasium, renovation of an existing power plant building, and related work, at 6501 North Charles Street in Baltimore County, Maryland (the "Project").  ECF No. 1 ¶ 14; *see* ECF No. 24, Exs. 1, 3 ¶ 9.  On or about July 17, 2002, SPHS contracted with HDR for architect-ural, engineering, and construction management services in connection with the Project.  ECF No. 24, Ex. 3 ¶ 10.  On or

about May 14, 2003, SPHS contracted with Whiting-Turner to serve

as general contractor of the Project.   ECF No. 1 ¶ 14; *see* ECF

No. 24, Ex. 3 ¶ 11.[11]   Whiting-Turner subcontracted with Alliance

for roofing work.   ECF No. 1 ¶ 15.[12]   Alliance subcontracted with

S&K.   *Id.* ¶ 16; ECF No. 1, Ex. F at 1 ("SC 1").   S&K

subcontracted with JFG.   *See* ECF No. 1 ¶ 21.

   C. The Underlying Action

   After the Project was completed, the Project's slate roof

system began to fail.   ECF No. 1 ¶ 18.[13]   On December 27, 2010,

SPHS sued Alliance, Whiting-Turner, HDR, and Heery in the

Circuit Court for Baltimore County, Maryland[14] (the "underlying

action"), seeking $10,000,000 in damages for breach of contract,

negligence, and other claims.   ECF No. 1 ¶¶ 19, 26; *see* ECF No.

24, Ex. 3.   In an amended complaint, SPHS alleged that the slate

roof system's failure was caused by numerous design and

---

[11] The contract between SPHS and Whiting-Turner is purportedly attached as Exhibit 2 to Heery's motion.   ECF No. 24 ¶ 2.   The document is unsigned.   *See* ECF No. 24, Ex. 2.

[12] The contract between Whiting-Turner and Alliance provided that Alliance "shall, at all times, maintain insurance," and that "Whiting-Turner, [SPHS] and other entities as may be reasonably requested shall be named as an additional insured under these policies of insurance."   ECF No. 1, Ex. F at 16 ("SC 8").

[13] The roof leaked and pieces of slate detached and fell from the roof, landing on walkways and common areas around the building.   ECF No. 1 ¶ 18.

[14] *Sheppard Pratt Health Sys., Inc. v. Whiting-Turner Contracting Co., et al.*, No. 03-C-10-014393 (Cir. Ct. for Balt. Cnty. filed Dec. 27, 2010).

installation defects, for which Alliance, Whiting-Turner, HDR, and Heery are liable.  ECF No. 24, Ex. 5 ¶¶ 22, 32.  On March 3, 2011, Alliance filed a third-party complaint joining S&K as a third-party defendant.  ECF No. 1 ¶ 20; see ECF No. 24, Ex. 4.[15] S&K, in turn, filed a fourth-party complaint joining JFG as a fourth-party defendant.  ECF No. 1 ¶ 21.

Alliance and S&K have tendered the claims against them to Penn National, asserting a right to a defense and potential coverage under the policies.  ECF No. 1 ¶¶ 28, 46.  Penn National informed Alliance and S&K of its belief that coverage did not exist[16] but has been providing a defense to each company under reservation of rights letters.  Id. ¶¶ 30, 48.

D. Procedural History of This Case

On May 10, 2012, Penn National filed suit for a declaratory judgment that it owes no duty to defend or indemnify Alliance or S&K with respect to the claims in the underlying action.  ECF

---

[15] The third-party complaint sought indemnification or contribution from S&K for "all judgments, expenses, damages, and costs arising out of or resulting from this matter."  ECF No. 24, Ex. 4 at 3.

[16] Penn National asserts that coverage does not exist for Alliance's liability to SPHS, or S&K's liability to Alliance and others, because the alleged property damage was not caused by an "occurrence" as defined in the policy.  ECF No. 1 ¶¶ 32, 50-51. Penn National also alleges that coverage for Alliance and S&K is barred by certain policy exclusions, including those for contractual liability, damage to property, and "damage to your work."  Id. ¶¶ 33-34, 39, 52.  Finally, Penn National asserts that Whiting-Turner is not an "additional insured" under the Automatic Additional Insured Endorsement.  Id. ¶¶ 35, 38, 42.

No. 1.   Whiting-Turner, Alliance, S&K, and SPHS timely answered the complaint.   ECF Nos. 11, 13, 16, 26; see ECF No. 19.   On June 14, 2012, Heery moved to dismiss.   ECF No. 24.   On June 15, 2012, HDR moved to dismiss.   ECF No. 29.   On June 19, 2012, Alliance moved to dismiss.   ECF No. 31.   On July 2, 2012, Penn National timely opposed Heery's and HDR's motions.   ECF Nos. 33, 34.   On July 3, 2012, S&K moved to join Alliance's motion.   ECF No. 35.   On July 6, 2012, Penn National timely opposed Alliance's motion.   ECF No. 36.   On July 13, 2012, Heery timely replied.   ECF No. 37.   On July 20, 2012, Penn National timely opposed S&K's motion.   ECF No. 38.   On July 23, 2012, Alliance timely replied.   ECF No. 39.   On August 3, 2012, S&K timely replied.   ECF No. 40.

## II. Analysis

### A. Legal Standards

#### 1. Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor.   Khoury v. Meserve, 268 F. Supp. 2d 600, 606 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004). The Court may "look beyond the pleadings" to decide whether it

has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id.*

"[A] claim under the Declaratory Judgment Act, even if made, does not confer jurisdiction." *Interstate Petrol. Corp. v. Morgan*, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (*citing Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950)). The declaratory judgment plaintiff must establish federal jurisdiction by alleging either a federal claim against the defendant, or that there would be federal question jurisdiction over a claim the defendant could bring against the plaintiff. *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001).[17]

2. Abstention

"[W]hen a plaintiff brings a declaratory judgment action, the district court enjoys discretion in deciding whether to assert jurisdiction over the action or abstain from hearing it." *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399, 401 (4th Cir. 2010). This discretion "stems from" the federal Declaratory Judgment Act, *id.*, which provides that district courts "*may*

---

[17] Lack of jurisdiction over the declaratory judgment defendant's claim does not end the court's inquiry. *United States v. Penn. Dep't of Envtl. Res.*, 923 F.2d 1071, 1073 (3d Cir. 1991) (district court abused its discretion by dismissing declaratory judgment suit when the district court had original jurisdiction over the civil action commenced by the United States--although the district court had previously remanded the underlying dispute because it did not arise under federal law).

declare the rights and other legal relations of any interested party seeking a declaration."  28 U.S.C. § 2201(a) (emphasis added).  "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  A district court's discretion is "especially crucial" when a related state proceeding is underway.  *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005).[18]

B. Motions to Dismiss for Lack of Subject Matter Jurisdiction[19]

Heery and HDR move to dismiss for lack of subject matter jurisdiction.  *See* ECF Nos. 24, 29; *see also infra* note 22.

1. Heery

Heery argues that it should be dismissed from this action because there is no "actual controversy" between it and Penn National and, therefore, no subject matter jurisdiction.  ECF

---

[18] In such cases, district courts have "wide discretion" to decline jurisdiction.  *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996).

[19] Heery, HDR, Alliance, and S&K have all moved to dismiss or stay under the abstention doctrine.  ECF Nos. 24, 29, 31, 35. Heery and HDR's jurisdictional arguments will be addressed first.  *See Discover Bank v. Vaden*, 396 F.3d 366, 367 (4th Cir. 2005) (the existence of subject matter jurisdiction is the "threshold question").

No. 24 at 4.  Heery further argues that, because the complaint "does not contain any facts with regard to Heery," Penn National has failed to state a claim against it.  *Id.* at 7.[20]  In support, Heery notes that: (1) it is not covered under any Penn National insurance policy; (2) it has no contractual relationship with Penn National; (3) it has not asserted any claim against Penn National, or any of Penn National's insureds, on the Project; and (4) neither party owes the other any duty of care.  ECF No. 24 at 5.  Penn National counters that "Heery's interests will be impacted by the outcome of this declaratory judgment action" and is thus "a proper party to this case."  ECF No. 34 at 6.

The Declaratory Judgment Act authorizes relief only "[i]n a case of actual controversy."  28 U.S.C. § 2201(a).  That is, "the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution."  *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir. 1990).  To qualify, "[i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* (internal quotation marks omitted).  "Basically, the question in each case is whether the facts alleged, under

---

[20] Heery alternatively requests the Court to stay this proceeding pending a decision in the underlying action.  ECF No. 24 at 1.

all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Penn National relies on *Maryland Casualty* to argue that a party whose interests "may be affected" is appropriately joined in an insurance coverage declaratory judgment action.   ECF No. 34 at 5.   But *Maryland Casualty* does not stand for this broad proposition.   In that case, the petitioner insurer had brought a declaratory judgment action against its insured and a third party Orteca, who had sued the insured in Ohio state court for damages resulting from an automobile collision.   *Pac. Coal & Oil Co.*, 312 U.S. at 271.   The Supreme Court held that an actual controversy existed as to Orteca, on the grounds that "Orteca is now seeking a judgment against the insured in an action which the latter claims is covered by the policy, and [Ohio law] *give[s] Orteca a statutory right to proceed against petitioner .* *. . if he obtains a final judgment against the insured which the latter does not satisfy.*"   *Id.* at 273 (emphasis added). Otherwise stated, because the insurer could ultimately be liable to Orteca, Orteca and the insurer's interests were immediately adverse, meeting the "actual controversy" requirement.

Here, Heery has not filed any claim against Penn National's insureds Alliance and S&K, and "is not contemplating filing such a claim at this time." ECF No. 34 at 6; ECF No. 37 at 2 n.1. *See generally* ECF No. 47-1. That Heery *could* file claims against Alliance and S&K, without any indication that it will do so, is insufficient to establish an "actual controversy" within the meaning of Article III.[21] Heery's motion to dismiss will be granted.

2. HDR

HDR argues that it should be dismissed from this action because "[n]o actual controversy exists between HDR and Penn National in the absence of contractual privity or some other claimed legal duty." ECF No. 29-1 at 4.[22] Penn National counters that HDR has sought indemnification or contribution from its insured, Alliance, making HDR and Penn National's legal interests immediately adverse. *See* ECF No. 33 at 5.

---

[21] *A.S. Abell Co. v. Chell*, 412 F.2d 712, 719 (4th Cir. 1969) ("[A] declaratory judgment may not be given for a purely hypothetical situation [or as] . . . an advisory opinion.").

[22] HDR brings its motion to dismiss under Fed. R. Civ. P. 12(b)(6). ECF No. 29; ECF No. 29-1 at 5. The existence of an "actual controversy" is a jurisdictional requirement. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004). Thus, HDR's motion will be treated as motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

As discussed above, the Declaratory Judgment Act authorizes relief in cases of "actual controversy."  28 U.S.C. § 2201(a). When the existence of an "actual controversy" is challenged, the relevant question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Pac. Coal & Oil Co.*, 312 U.S. at 273.   HDR acknowledges that "Alliance and HDR have . . . filed cross-claims *against one another* for common law indemnity and contribution,"[23] but characterizes the resulting connection to Penn National as "tenuous at best."  ECF No. 29-1 at 3, 5 (emphasis added).  HDR is incorrect.  HDR's claim against Penn National's insured renders HDR and Penn National's legal interests immediately adverse and thus establishes an "actual controversy" within the meaning of Article III.  HDR's motion to dismiss will be denied.

C. Motions to Dismiss or Stay Under the Abstention Doctrine

HDR, Alliance, and S&K have moved to dismiss or stay under the abstention doctrine.  ECF Nos. 29, 31, 35.  Penn National

---

[23] Although the docket sheet is unclear, *see* ECF No. 47-1, even HDR's stated intent to cross claim against Alliance would suffice to establish jurisdiction.  *See Pac. Coal & Oil Co.*, 312 U.S. at 273 (asking whether the facts alleged show that there is a substantial controversy of "sufficient immediacy and reality" to warrant declaratory judgment).

argues that abstention is unnecessary but, in the event this
Court disagrees, asks the Court to stay rather than dismiss the
case. *E.g.*, ECF No. 36 at 4, 13.

   1. Choice of Law

   In a diversity case, the choice of law rules are those of
the state in which the district court sits. *Klaxon Co. v.
Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Maryland
follows the *lex loci contractus* rule, under which "the law of
the jurisdiction where the contract was made controls its
validity and construction." *Kramer v. Bally's Park Place, Inc.*,
311 Md. 387, 390, 535 A.2d 466, 467 (1988). An insurance policy
is made in the "state in which the policy is delivered and the
premiums are paid." *Aetna Cas. & Sur. Co. v. Souras*, 552 A.2d
908, 911 (Md. 1989). Because the Penn National policies appear
to have been delivered to, and the premiums paid from,
Maryland,[24] Maryland law governs their interpretation.[25]

   In tort cases, Maryland follows *lex loci delicti*, which
applies the law of the place where the injury occurred. *Lab.
Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006). Because the
property damage alleged in the underlying action occurred in

---

[24] Alliance and S&K are Maryland corporations.   ECF No. 1 ¶¶ 2-7.

[25] *See, e.g.*, *Souras*, 552 A.2d at 911; *St. Paul Fire & Marine
Ins. Co. v. Advanced Interventional Sys., Inc.*, 824 F. Supp.
583, 584 (E.D. Va. 1993).

Maryland, Maryland law also governs SPHS's negligence and other tort claims.[26]

2. The Merits

District courts enjoy discretion in deciding whether to assert jurisdiction over an action or abstain from hearing it. *Riley*, 371 F. App'x at 401.  "The issue of whether a federal court should decline to entertain an insurer's declaratory action when it is closely related to pending state court litigation has been one of recurrent difficulty."  *Mitcheson v. Harris*, 955 F.2d 235, 236 (4th Cir. 1992).  Under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), federal courts should consider "the inconvenience of the federal forum; the desirability of avoiding piecemeal litiga- tion; and the order in which jurisdiction was obtained by the concurrent forums."  *Id.* at 818 (internal citations omitted).  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  *Id.* at 818-19.

In the Fourth Circuit, courts should further consider:

(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues

---

[26] *See, e.g.*, *Al-Quraishi v. Nakhla*, 728 F. Supp. 2d 702, 762-63 (D. Md. 2010); *Nugent v. Curry*, 908 F. Supp. 309, 311-12 (D. Md. 1995).

raised in the federal action can more efficiently be
resolved in the court in which the state action is
pending; [](iii) whether permitting the federal action
to go forward would result in unnecessary entanglement
between the federal and state court systems, because
of the presence of overlapping issues of fact or law[;
and (iv)] whether the declaratory judgment action is
being used merely as a device for procedural fencing--
that is, to provide another forum in a race for res
judicata or to achiev[e] a federal hearing in a case
otherwise not removable.

*Centennial Life*, 88 F.3d at 257 (alterations in original)
(internal quotation marks omitted).

Maryland has a strong interest in deciding the issues
raised in this declaratory action, which depend solely upon
state law. *Cf. Mitcheson*, 955 F.2d at 238. Moreover, it stands
to reason that these issues can be more efficiently resolved in
the underlying action, which has undergone discovery and motions
practice since 2010 and is currently scheduled for an August 28,
2013 settlement conference and a September 2013 trial. ECF No.
47-1 at 7, 17.[27] By contrast, this declaratory action was filed
in May 2012 and there has been no discovery. *See* docket.

Permitting this action to proceed may also result in
unnecessary entanglement with the Maryland court. Specifically,
the moving Defendants argue that "to resolve whether the Penn
National policies provide coverage for the claims against

[27] *Cf. Pa. Nat'l Ins. Co. v. Eastern Homes, Inc.*, No. RDB-07-672,
2007 WL 4179428, at *6 (D. Md. Nov. 19, 2007) (explaining that
there is a "strong interest in resolving all litigation in a
single court system where the judge is already intimately
familiar with the relevant facts").

17

Alliance & S&K [in the underlying action], this Court will need to consider much of the same evidence that has been raised and will likely be presented by SPHS." ECF No. 29-1 at 7; see, e.g., ECF No. 31 at 2 (¶ 3); ECF No. 35 at 3, 4.   Penn National counters that abstention is "unnecessary" and "inappropriate" because "the primary coverage issues in this declaratory judgment action can be resolved solely through the application of the provisions of the insurance policy, as interpreted by state law . . . without the need for the making of factual determinations that are at issue in the underlying action." ECF No. 33 at 6; see also, e.g., ECF No. 38 at 3.

Penn National seeks a declaration that it owes no duty to defend Alliance and S&K in, or indemnify them for, the claims in the underlying action. ECF No. 1. To determine whether there is a potentiality of coverage giving rise to the duty to defend, Maryland courts engage in a two-part inquiry: "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?" St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282, 285 (1981). "The first question focuses upon language and requirements of the policy, and the second question focuses upon the allegations of the tort suit." Id. As to both questions, the court "need not make independent

findings as to what actually occurred . . . but rather need only decide whether the [underlying action's] allegations, if proved, would bring the factual scenario within the scope of [coverage]." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004). Thus, this Court's determination on Penn National's duty to defend would not risk entanglement with the underlying action.

Penn National's request as to its duty to indemnify poses a more difficult question. "Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend."[28] "The duty to indemnify, by contrast, refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim."[29] Generally, "[t]he question of whether the insurer has a duty to pay a final judgment against the insured turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage." *Steyer v. Westvaco Corp.*, 450 F. Supp. 384, 389 (D. Md. 1978). A declaration on indemnification is

---

[28] *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 570 (Md. 1995).

[29] *Perdue Farms, Inc. v. Travelers Cas. & Surety Co. of Am.*, 448 F.3d 252, 257-58 (4th Cir. 2006).

inappropriate when related to issues to be litigated.[30]
Conversely, "[i]f the issue upon which coverage is denied were
not the ultimate issue to be determined in a pending suit by a
third party, a declaratory judgment would be appropriate."[31]

According to Penn National, the "primary" issue in this
case is whether the claims against Alliance and S&K in the
underlying action are "occurrences" under the policies. *E.g.*,
ECF No. 33 at 8; ECF No. 36 at 6. The Penn National policies'
CGL Coverage Form provided that insurance applied to "'bodily
injury' and 'property damage'" only if the injury or damage was
"caused by an 'occurrence'." CGL Form § I.A.1(b). "Occurrence"
was defined as "an accident, including continuous or repeated
exposure to substantially the same general harmful conditions."
*Id.* § V(13). In the underlying action, SPHS has asserted a
claim that Alliance was negligent in failing to:

> (1) identify flaws in design or construction that
> would cause the slate roof system to fail, allowing
> water to infiltrate the building and allowing slates
> to become unsecured and fall to the ground; (2) ensure
> that the slate roof system was designed and
> constructed free of any defects; (3) ensure that the
> slate roof system complied with the Project plans and
> specifications; (4) install the slate roof system
> using materials of good quality; and (5) perform its
> work in a qualified, skilled, workmanlike manner.

---

[30] *See Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 656 A.2d
779, 788 (Md. 1995).

[31] *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 849 (Md.
1975).

ECF No. 1, Ex. C ¶ 80.[32]

The moving Defendants argue that the coverage issue of whether the claims in the underlying action are "occurrences" overlaps with SPHS's underlying negligence claim against Alliance.[33] Citing *Lerner Corp. v. Assurance Co. of America*, 707 A.2d 906, 912 (Md. 1998), Penn National counters that "faulty workmanship" is not an "accident" for which coverage is owed. *E.g.*, ECF No. 33 at 9. *Lerner*, however, emphasized that coverage may exist when the alleged defect causes "unrelated and unexpected personal injury or property damage to something other than the defective object itself." 707 A.2d at 912.[34] The underlying action includes allegations of property damage to Alliance's work. *See, e.g.*, ECF No. 24, Ex. 5 ¶ 25 (alleging damage to OSB sheathing); ECF No. 1, Ex. D (Alliance's third-party complaint against S&K).

---

[32] SPHS has further alleged that "leaks caused by the defective slate roof system and other building components have caused significant property damage," requiring removal and reconstruction of the entire slate roof system and "extensive repairs" to other building components. ECF No. 1, Ex. C ¶¶ 82-83.

[33] *E.g.*, ECF No. 31 at 9 (*quoting French v. Assurance Co. of Am.*, 448 F.3d 693, 698 (4th Cir. 2006)).

[34] *See also Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1282 (10th Cir. 2011) (citing *French*, 448 F.3d 693, and other cases, for the proposition that there is a "strong recent trend" interpreting "occurrence" to include "unanticipated damage to nondefective property resulting from poor workmanship").

The *Colorado River* and Fourth Circuit factors counsel abstention.  Thus, the motions to stay will be granted.[35]

III. Conclusion

For the reasons stated above, Heery's, Alliance's, and S&K's motions will be granted; HDR's motion will be granted in part and denied in part.

_____3/14/13_____                    _____
Date                                     William D. Quarles, Jr.
                                         United States District Judge

---

[35] Because certain issues may be left unresolved in the underlying action--such as whether Whiting-Turner is an "additional insured" under the Alliance policy--dismissal is not warranted.  *See Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd.*, 669 F.2d 940, 942-43 (4th Cir. 1982) ("A federal court abstaining due to the presence of an unsettled question of state law contemplates that the case may return to federal court for the resolution of federal issues in light of the state court's determination.  In this situation, the district court should merely stay the proceeding, and retain it on its docket.  On the other hand, if federal abstention is justified by the belief that the exercise of jurisdiction would impermissibly affect a complex state administrative scheme or implicate federalism concerns . . . or that the determinative issues will *unfailingly be resolved* within the parameters of the state-court litigation, then dismissal is proper, as no further action by the district court is anticipated." (internal citations omitted) (emphasis added)).